NETTIE B. YORK *vs.* CLARA E. McCAUSLAND ET ALS.

Cumberland.     Opinion May 12, 1931.

*Laughlin & Gurney,* .
*Gail Laughlin,* for plaintiff.
*Chapman & Chapman,*
*Sydney B. Larrabee,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.  The case is before this court on appeal from the decree of a single Justice dismissing a bill in equity after due hearing at which it appeared that by deed dated September 19, 1894, recorded in Cumberland Registry, Book 618, Page 79, Arthur E. Marks conveyed to Herbert W. McCausland the following described real estate:

"A certain lot or parcel of land with all buildings thereon, situated on the Northerly side of Clifton Street in said Deering, more particularly bounded and described as follows, viz.: Beginning at a point in the Northerly side of Clifton Street, distant Easterly from the intersection of the Northerly side line of Clifton Street with the Easterly side line of Forest Avenue One Hundred and Five (105) feet; thence running Northerly parallel with said Avenue a distance of Ninety-Four and one half (94½) feet to land of Mary E. Whitney; thence running Easterly along the line of said Whitney's land to the South Easterly corner thereof; thence Northerly along the Easterly line of said Whitney's land a distance of six inches more or less, to the point where the extension of the Northerly line of land sold to Louise M. Lidback by Warren and Ann Sparrow by deed dated Oct. 23-A. D. 1880 and recorded in Cumberland Registry of Deeds in Book 475 Page 431, intersects said Easterly side line of Whitney's land; thence running Easterly in a straight course a distance of Fifty Two feet (52) more or less to the Northwest corner of said Lidback's land; thence running a little east of Southerly by the Westerly side line of said Lidback's land a distance of Ninety Five (95) feet more or less to Clifton Street; thence running Westerly by said Clifton Street Sixty (60) feet to the point of beginning, with the right of way along and over said Clifton Street, and the right to connect with and use the main drain running across Arlington Street and the lots adjoining the lot hereby conveyed on the Northerly side thereof, and of entering upon said lots and the lot adjoining on the East to repair and reconstruct such drain as occasion may require. Meaning hereby to convey a part of the property conveyed to me by Charles S. Foss by his deed dated April 3rd A.D. 1894 and recorded in Cumberland Registry of Deeds in Book 611, page 212."

It also appeared that Arthur E. Marks conveyed to Fannie E. Hopkinson by deed dated March 27, 1896, acknowledged March 28, 1896, and recorded April 4, 1896, real estate described as follows:

"A certain lot or parcel of land with the buildings thereon, situated in said Deering, and bounded and described as follows, to wit: Beginning at the South-Westerly corner of Clifton Street at the point of intersection of said Clifton Street with Forest Avenue; thence Northerly on the Westerly side line of said Clifton Street eighty-nine (89) feet to a stake; thence North Westerly at nearly right angles with said Clifton Street and along the Southerly side-line of land deeded to H. W. McCausland forty-seven (47) feet to an iron rod located in the South-Easterly side line of land of L. W. Whitney; thence Southerly on the South Easterly side-line of said Whitney's land eighty-nine (89) feet more or less to the Northerly side-line of Forest Avenue; thence South-Easterly on the Northerly side-line of said Forest Avenue forty-seven (47) feet to the point of beginning."

It further appeared that by deed dated March 26, 1896, acknowledged March 28, 1896, and recorded on June 27, 1927, more than thirty-one years after the date thereof, the said Arthur E. Marks conveyed to Herbert W. McCausland the following described real estate:

"A certain lot of land, situated in said Deering and bounded and described as follows, to wit: Beginning at a point on the South-Easterly corner of land of said McCausland on the North-Westerly side line of Clifton Street, thence southerly on the North Westerly Side line of said Clifton Street, sixteen (16) feet to a stake; thence North-Westerly at nearly right angles with said Clifton Street forty-seven (47) feet, more or less, to an iron rod in the ground, situate seven feet southerly from the Southerly side line of said McCausland's land; thence Northerly on the Easterly side-line of L. W. Whitney's land seven (7) feet to the land of said McCausland; thence Easterly on the Southerly side-line of said McCausland's land forty-seven (47) feet more or less to point of beginning."

In connection with the September 19, 1894, deed from Marks to McCausland, it was not in dispute between the parties that the Southwest corner of the Lidback land therein described, where it intersected the northerly side of Clifton Street, was a definite and well defined landmark or bound and that the lot as described in that deed had a frontage of sixty (60) feet on Clifton Street, extending westerly from the aforesaid Lidback corner.

It was stipulated and agreed by the parties to the case that Fannie E. Hopkinson died September 24, 1913, and that Elizabeth H. Marks, her sister, was her only heir at law.

On July 28, 1914, by deed recorded the following day, Elizabeth H. Marks conveyed to Nettie B. York, the plaintiff, as follows:

"A certain lot or parcel of land with the buildings thereon, situated in said Portland, in that part known as the Deering District, and bounded and described as follows, to wit: Beginning at the Southwesterly corner of Clifton Street at the point of intersection of said Clifton Street with Forest Avenue; Thence Northerly on the westerly side line of said Clifton Street eighty-nine (89) feet to a stake; thence Northwesterly at nearly right angles with said Clifton Street and along the southerly side line of land deeded to H. W. McCausland forty-seven (47) feet to an iron rod located on the Southeasterly side line of land of L. W. Whitney; thence Southerly on the southeasterly side line of said Whitney's land eighty-nine (89) feet more or less to the northerly side line of Forest Avenue; thence southeasterly on the Northerly side line of said Forest Avenue forty-seven (47) feet to the point of beginning. Said property is deeded subject to taxes for 1914." This description was the same as that in the 1896 deed from Marks to Hopkinson.

It was further stipulated and agreed between parties that Herbert W. McCausland died on June 25, 1927, and that under his will, duly probated, the defendants succeeded to his title to all real estate owned by him at the time of his decease.

The plaintiff in her bill, after describing the land in the above conveyance to her from Elizabeth H. Marks, alleged that there-

upon she "entered into possession of said real estate and has ever since been and now is in possession of and occupying said real estate."

It was undisputed between parties that on September 19, 1894, Arthur E. Marks was the owner of all the real estate described in the deeds hereinbefore set forth. The plaintiff alleged in her bill that by reason of the recording of the "purported deed" from Marks to McCausland dated March 26, 1896, and recorded in Book 1269, Page 131, more than thirty-one years after its "purported execution" that "a cloud or suspicion is thrown upon the title of the plaintiff to the aforesaid real estate conveyed by said Elizabeth H. Marks to her, whereby the value of said real estate is greatly depreciated." In the prayer of the bill she asked the Court to decree "that the delivery of said deed from Elizabeth H. Marks to the plaintiff and the recording of the same prior to the recording of the deed from Arthur E. Marks to Herbert W. McCausland, recorded in Book 1269, Page 131, conveyed to the plaintiff all the land on the Northerly side of Clifton Street as described in said deed, extending Easterly from Forest Avenue to the Westerly line of the real estate described in the deed from Arthur E. Marks to Herbert W. McCausland, recorded in said Registry in Book 618, Page 79.", which was the September 19, 1894, deed. She also asked that it be decreed that the Easterly side of her land be bounded by the Westerly line of the land as conveyed to said Herbert W. McCausland by the deed of September 19, 1894, *supra*, and that decree be entered that the defendants had no right, title, interest, or claim in or to any portion of the real estate lying Westerly of said line, under or by virtue of the "purported deed" from said Marks to McCausland, as recorded in Book 1269, Page 131, *supra*, being the 1896 deed from Marks to McCausland as indicated above.

She also asked that a decree be entered perpetually restraining and enjoining the defendants from selling or attempting to sell and from exercising any acts of ownership over the lot of land embraced within the boundaries of the aforesaid March 26, 1896, deed from Marks to McCausland recorded as above, "or in any other manner casting a cloud upon the plaintiff's title to her said premises or setting up an adverse claim to the same or interfering with her possession thereof," concluding with a general prayer for relief.

The defendants in their reply alleged that Herbert W. McCausland entered into possession of the real estate described in the said deed of March 26, 1896, and was at all times in possession of the same until his death, and that upon his death Clara E. McCausland, life tenant under the will, entered into possession of said real estate and that she had ever since been and was at the time the action was brought in possession of the same.

The defendants further claimed that the line of Forest Avenue mentioned in the deed to Fannie E. Hopkinson, *supra*, from which the distance on Clifton Street was measured, was the old line of Forest Avenue as laid out and travelled prior to a widening thereof, the record of which was closed in 1897, and that measuring easterly from that Forest Avenue line to the undisputed Lidback corner, the total Clifton Street frontage of the three lots in question was the total frontage described in the three deeds involved.

The sitting Justice in his findings said, "The parties own adjoining lots and the line between those lots is in dispute. Upon the title of this disputed land rests the decision. Each of the parties rests claim upon their respective deeds.

"One Arthur E. Marks originally owned all of the land now owned by both parties. Conveyance was made by Marks to Herbert W. McCausland of the major portion of his lot, plaintiff's exhibit 4, and subsequently Marks delivered to McCausland a deed, plaintiff's exhibit 5, which deed remained unrecorded until delivery and recording of all other deeds which have any bearing upon the question at issue. Subsequent to the delivery of this deed Marks made a conveyance to Fannie E. Hopkinson, plaintiff's exhibit 6, and the land as conveyed came by mesne conveyances to the plaintiff." . . . The sitting Justice further stated, "I find that the plaintiff did not, at the time of the filing of her bill, have title to any of the land included in the deed from Marks to McCausland, plaintiff's exhibit 5, the recording of which deed the plaintiff claims is a cloud upon her title.

"I rule that the said deed from Marks to McCausland, plaintiff's exhibit 5, and the recording thereof and any other act complained of in plaintiff's bill is not a cloud upon the title of the plaintiff."

By final decree the plaintiff's bill was dismissed and an appeal taken, on which appeal the case has come to this court.

From a careful examination of all the allegations contained in the bill, in the light of the evidence disclosed in the record, we are compelled to the conclusion that the plaintiff had a complete and adequate remedy at law. A Court of Equity was not the proper tribunal in which to try out a question of title to real estate when clearly the sole question involved was location of lines on the face of the earth. No fraud was alleged or proved. Possibility of multiplicity of suits was not alleged, and the record indicated no such possibility. Nor did any other element appear requiring the power of a court in equity to prevent injustice.

Allegation was made that the second deed from Marks to McCausland, recorded thirty-one years after its date, constituted a cloud on the title. The plaintiff strenuously argued her contention that the March 27, 1896, deed from Marks to Fannie E. Hopkinson covered the same land conveyed by Marks to McCausland, March 26, 1896, and that because the Hopkinson deed was recorded long before the deed to McCausland and, because neither Fannie E. Hopkinson nor the plaintiff who received and recorded her deed in 1914 had constructive or actual notice of the second McCausland deed, she, the plaintiff, therefore acquired title to the land described in that deed and the presence of that deed on the records constituted a cloud on her title.

To allege and claim a cloud on title is not sufficient of itself to give a court of equity jurisdiction. The proper forum to try titles to land is a court of law, and this jurisdiction can not be withdrawn at pleasure, and transferred to a court of equity under the pretense of removing clouds from title. *Miles et al* v. *Strong et al*, 62 Ct., 95, 25 Atl., 459.

The bill discloses nothing more than a line dispute between the plaintiff and the defendants and the evidence in the case adds nothing which changes that situation.

"It is not the business of equity to try titles, and put one party out and another in." *Frost et als* v. *Walls et als*, 93 Me., 412; *Robinson* v. *Robinson et al*, 73 Me., 176.

In the case of *Watkins* v. *Childs*, 79 Vt., 234, a bill in equity was brought which showed that a controversy had arisen between the plaintiff and the defendant as to the true location of the line di-

viding their adjoining lots. The case came up on an appeal to a decree sustaining a demurrer. The decree was affirmed, the Court saying, "It is sufficient to say that the law court affords the oratrix a plain and adequate remedy. The existence of a dispute as to the boundary line between independent proprietors of adjoining lands does not afford sufficient ground for the interposition of a court of equity to ascertain and fix such boundary. . . . Nor will equity interfere to determine a question of title involved. 'It is not the business of equity to try titles, and put one party out and another in.' . . . Neither irreparable mischief, and multiplicity of suits, not oppressive litigation is threatened, for the dispute can be settled in a single action of trespass."

"The rule is, that when a cause of action cognizable at law is entertained at equity on the ground of some equitable relief sought by the bill, which it turns out can not, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further, and should dismiss the bill without prejudice." *Gamage* v. *Harris et als*, 79 Me., 531, 536, cited with approval in *Snow* v. *Russell et al*, 93 Me., 362.

It is a well established principle that equity will not take jurisdiction where the remedy at law is plain, adequate and complete. "In all cases where the plaintiff holds or claims to have a purely legal estate in land, and simply seeks to have his title adjudicated upon, or to recover possession against an adverse claimant who also relies upon an alleged legal title, there being no equitable feature of fraud, mistake, or otherwise, calling for the application of equitable doctrines or the granting of peculiar equitable reliefs, the remedy at law is adequate, and the concurrent jurisdiction of equity does not exist. A suit in equity, under its concurrent jurisdiction, will not be maintained to take the place of the action of ejectment, and to try adverse claims and titles of land which are wholly legal, and to award the relief of a recovery of possession." 1 Pom. Eq. Jur., 4th Ed., Sec. 177. See also 5 R. C. L., Sec. 4, page 637.

We have referred to only a few of the many cases which might be cited covering the same general principle, which is so well established that citation of authority seems almost superfluous.

The fact that in the instant case no demurrer was filed to the bill does not confer jurisdiction, the absence of which is clearly shown. *Loggie* v. *Chandler*, 95 Me., page 220.

Without further review of the evidence, we hold that the plaintiff must seek her remedy in a court of law and that the bill, for want of jurisdiction, must be dismissed without prejudice.

*Appeal dismissed.*
*Decree in accordance*
*with this opinion.*