STATE OF MAINE                                          SUPERIOR COURT
                                                           CIVIL ACTION
YORK, ss.                                         DOCKET NO. RE-09-085
                                                  GAB - YOR - 10/22 2010

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

                    Plaintiff

        v.                                              ORDER

TOWN OF SANFORD,

                    Defendant

        The parties cross-move for summary judgment on the Maine Department of

Environmental Protection's (MDEP) sole remaining count of unjust enrichment.

Following hearing, the Town's Motion will be granted and the MDEP's Denied.

                            **BACKGROUND[1]**

        On or around June 12, 2003, MDEP responded to a report of prohibited

discharges and improperly managed hazardous waste at a facility located within the

former Sanford textile mill complex in downtown Sanford. (Stipulated S.M.F. ¶¶ 1–2.)

The property was owned by Northern Properties, LLC, and occupied by Manaero, LLC.

(Stipulated S.M.F. ¶¶ 2–3.) It is identified in the municipal tax maps as Map J-29, Lot

19A, and had previously been owned and occupied by the Aerofab Company.

(Stipulated S.M.F. ¶¶ 3, 10.) On entering the property, MDEP confirmed that hazardous

waste was present and likely being discharged. (Stipulated S.M.F. ¶¶ 4–5.)

---

[1]     This case is consolidated with *Bussiere v. Town of Sanford*, RE-09-080. That case is not
relevant to the motions currently before the court.

MDEP and the Sanford Fire Department determined that the hazardous materials at the site posed a public health and safety threat, specifically endangering building visitors, responding firefighters, and the local environment. (Stipulated S.M.F. ¶ 5.) All known hazardous waste was inventoried, collected, and transported off the property by an MDEP authorized contractor. (Stipulated S.M.F. ¶ 5.) As of September 2003, MDEP reported expenses of $31,294.70 for the waste collection, spill remediation, and waste disposal. (Stipulated S.M.F. ¶ 6.) MDEP identified Northern Properties, LLC, as the owner and potentially responsible party. (Stipulated S.M.F. ¶ 7.) It also identified Manaero, LLC, Aerofab Co., Emile Bussiere, and the president of Aerofab, Armand Rivard, as other potentially responsible parties under 38 M.R.S.A. §§ 1362(2) and 1367. (Stipulated S.M.F. ¶ 6.)

On or about September 4, 2003, MDEP mailed requests for reimbursement of $31,294.70 to Mr. Rivard, to Wadi Rahim of Manaero, LLC, and to Northern Properties, LLC. (Stipulated S.M.F. ¶ 8, Ex. B.) The letter was followed by a "Final written request for reimbursement" totaling $34,294.70, mailed on October 14, 2003. (Stipulated S.M.F. ¶ 9, Ex. C.) This request stated that MDEP was "fully prepared to start legal proceedings." (Stipulated S.M.F. ¶ 9.) On November 15, 2004, MDEP certified a lien in the amount of $38,780.17 against the property, identifying it as an uncontrolled hazardous substance site and naming Northern Properties, LLC, as a responsible party. (Stipulated S.M.F. ¶ 10.) It was later revealed that Northern Properties had ceased operations in May 2003. (Pl.'s Supp. S.M.F. ¶ 2.)

Approximately four years later, on September 18, 2008 the Town of Sanford entered into an agreement with Northland Enterprises, LLC[2] to jointly rehabilitate a property situated on Tax Map J29, Lot 17, adjacent to the parcel subject to MDEP's lien.

---

[2] Northland Enterprises, LLC is apparently unrelated to Northern Properties, LLC.

(Pl.'s Supp. S.M.F. ¶ 2, Ex. 2.) This agreement obligated the Town to provide Northland Enterprises with a permanent easement or long-term lease for at least 100 parking spaces on Town property within 400 yards of Lot 17. (Pl.'s Supp. S.M.F. ¶ 2, Ex. 2.) On June 2, 2009, the Sanford Town Council adopted two resolutions to acquire Lot 19A by eminent domain as a blighted property pursuant to 30-A M.R.S.A. § 5203(3) (2009).

The parties now stipulate that the property at Lot 19A has no measurable as-is market value and represents a significant liability due to environmental issues and remediation costs not encompassed by MDEP's clean-up action. (Def.'s Supp. S.M.F. ¶ 1.) However, MDEP and the Town initially disagreed on the measure of just compensation for the taking. MDEP filed this action against the Town on September 4, 2009 to establish the compensable value of its lien interest in the property under section 5203(5). It amended its complaint to add a claim for unjust enrichment on January 21, 2010, and voluntarily withdrew its claim under the lien on March 3, 2010. The Town filed its motion for summary judgment on the remaining count of unjust enrichment on May 10, 2010, and MDEP filed its cross-motion on May 28, 2010.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); see also Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 4, 770 A.2d 653, 655. Two preliminary matters must be disposed of before reaching the substance of MDEP's unjust enrichment claim. First, the Town argues that MDEP cannot maintain this action because they are both entities of the State who were acting pursuant to their statutory mandates. It contends that MDEP is attempting to curtail its power of eminent domain and cites to Department of Corrections v. Public Utilities Commission for the proposition that one state entity cannot impinge on the authority of another absent express statutory

3

authority. 2009 ME 40, 968 A.2d 1047. That case concerned the Utilities Commission's attempt to treat the Department of Corrections as a utility under its jurisdiction, and was resolved on a narrow question of statutory interpretation. *Id.* ¶¶ 12–13, 968 A.2d at 1051. It is not applicable to the facts of this case.

Second, unjust enrichment is an equitable remedy that "will not be granted when there exists an adequate remedy at law or when an adequate legal remedy, once available, has been lost by the failure to the party seeking equitable relief to pursue that remedy in a timely manner." *Keniston v. JP Morgan Chase Bank*, 2007 ME 29, ¶ 9 n.6, 918 A.2d 436, 439 n.6 (citing *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977); *see Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221, 224 (identifying unjust enrichment as an equitable remedy in contrast to quantum meruit). An adequate remedy is one that is both plain and capable of providing complete relief. *York v. McCausland*, 130 Me. 245, 253, 154 A. 780, 783 (1931). Whether an adequate remedy at law is available is itself a question of law. *Kenniston*, 2007 ME 29, ¶ 9 n.6, 918 A.2d at 439 n.6 (quoting *Town of Bar Harbor v. Evans*, 499 A.2d 157, 158 (Me. 1985)).

MDEP did not waive its right to pursue an equitable remedy by withdrawing its initial claim. That claim was brought under 30-A M.R.S.A. § 5204(5) to challenge the fair compensation the Town was required to pay MDEP when it took the subject property by eminent domain. The record shows that the property is valueless, so the statutory claim cannot offer complete relief.

To prevail on its claim for unjust enrichment, MDEP must "show that: (1) it conferred a benefit on the [Town]; (2) the [Town] had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Platz Assocs. v. Finley*, 2009 ME 55, ¶ 27, 973 A.2d 743, 750 (quoting *Me. Eye Care Assocs. v.*

4

*Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712) (quotations omitted). Each element of the claim presents a question of fact. *Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994).

MDEP contends that its remediation work performed in the summer of 2003 conferred a benefit on the Town when it acquired the subject property in 2009. If MDEP had not spent $31,294.70 to remove the hazardous waste when it did, it argues that the Town would have had to incur an expense to remove that material six years later. The Town disputes this by arguing that it had no interest in the property in 2003, and it paid just compensation for the property in 2009. That compensation was $0.00 because the property continues to be a significant liability requiring further remediation.

The critical issue in this case is whether the Town of Sanford is unjustly retaining a benefit created by MDEP's hazardous waste remediation effort. The Town highlights its status as a municipality to argue that it should not be held liable on MDEP's unjust enrichment claim. Municipalities have historically been immunized from liability under quantum meruit to protect "citizens against capricious governmental behavior . . . ." *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 106 n.4 (Me. 1994) (quoting *Hazle Township v. City of Hazleton*, 45 Pa. Commw. 370, 407 A.2d 893, 895 (Pa. 1979)). Maine has moved away from giving towns such blanket immunity, however, and held that their status as municipalities is just one factor among many that determine whether liability for unjust enrichment should attach. *Id.* at 106. Municipalities are unique because "taxpayers will bear the burden of compensating the plaintiff should recovery be allowed . . . ." *Id.* This case presents an action by the state against a town to recover for unjust enrichment.

However, when MDEP cleaned up the Sanford mill complex in 2003, it presumably paid for the action out of the Uncontrolled Sites Fund established by 38 M.R.S.A. § 1364. This fund is used by MDEP to "ensure that the threats posed by uncontrolled hazardous substance sites are abated, cleaned up or mitigated promptly. 38 M.R.S.A. § 1361. The fund receives all money recovered as fines, penalties, punitive damages, damages, costs, and fees recovered in actions against violators of the Hazardous Substance Sites Act. 38 M.R.S.A. §§ 1365(6), 1367. It also receives money paid by persons requesting MDEP's technical assistance in determining whether real property subject to a transaction is or might be contaminated. 38 M.R.S.A. § 342(15).

While the Uncontrolled Sites Fund is technically public money, it appears to come primarily from violators or persons seeking MDEP's technical services. It is not entirely accurate to say that Maine taxpayers qua taxpayers will bear the burden in this case regardless of its outcome. If MDEP succeeds on its claim, the taxpayers of Sanford will certainly bear the cost of its 2003 response action. If MDEP is not successful however, it appears that state taxpayers bear only a remote burden. The burden would instead fall on the Uncontrolled Sites Fund, which exists to fund clean-up actions when the responsible parties are absent or insolvent as in this case.

There is no contention that the general populace of Sanford was in any way responsible for the uncontrolled contamination remedied by MDEP in 2003. The parties who were responsible are apparently not available for prosecution or are insolvent. Given that the Uncontrolled Sites Fund exists to cover clean-up actions where the responsible parties are insolvent, it seems unjust to hold the taxpayers of Sanford accountable for MDEP's clean-up costs merely because the Town took over the property five years later. Doing so would also work against the legislative purpose of remediating blighted properties by imposing additional costs on a municipality seeking

6

to rehabilitate a polluted lot. *See* 30-A M.R.S.A. § 5203 (empowering municipalities to exercise eminent domain over blighted properties for rehabilitation purposes); 38 M.R.S.A. § 1361 (finding it in the public interest to abate or clean up uncontrolled sites). All of this weighs heavily against finding that the Town of Sanford has been unjustly enriched by MDEP's action.

## CONCLUSION

For reasons stated above, the Town's Motion for Summary Judgment is Granted and MDEP's Motion is Denied.

Dated:  October 22, 2010

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
PETER LAFOND AAG
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME   04333-0006

NANCY MACIROWSKI AAG
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME   04333-0006

ATTORNEY FOR DEFENDANT:
BRYAN DENCH, ESQ.
SKELTON TAINTOR & ABBOTT
PO BOX 3200
AUBURN ME   04212-3200

7